Wardlaw, J.
delivered the opinion of the Court.
The defendants’s counsel seems to have a strong sense bf great injustice done to his clients by the high verdict which has been rendered against them, and has dwelt at much length before this Court, upon the facts of the case. According to the view which may be taken of the motives that influenced the defendants, and of the acts of insult and injury which in truth Were ¡perpetrated by them, or by other persons under their direction, the amount of the verdict may appear either excessive, or only conformable to a lofty standard of reparation and punishment. My own opinion of the real facts of the case is this: I believe that the elder defendant was the leader and director of the main transaction ; that his motive in exercising the right of re-opening the ditch, (which he really believed was his,) was not merely to preserve his property by marking the boundary, but was to annoy the plaintiff, and through him other persons ; that some acts of rudeness committed by his underlings, were not such as he himself would have been guilty of, but naturally proceeded from his own violence, and may therefore be justly imputed to him: that his son showed a willingness to sustain him, not only in opening the ditch but in subsequent violence, and may well be found a co-trespasser who (where the jury do not choose to sever,) is liable in law according to the .extent of the damages which may be found against him that) of all concerned, was most blameable, although in conscience he is liable to a much less extent: but that the violence and *432 insul ts to the plaintiff, to the plaintiff’s wife, and to the plaintiff’s house, were unpremeditated acts growing out of the ' heat which arose in a sudden quarrel with a third person, and were in themselves neither productive of actual damage, nor intended to wrong the plaintiff; and that upon the whole, a verdict which found one hundred times as much as would have compensated all actual injury, by restoring the plaintiff’s garden and fence to the condition they were in before the wrong done, would have sufficiently punished the defendants. If, then, it had been my busines to find a verdict, I would not have gone above five hundred dollars, for in general (upon many considerations, and with certain exceptions, which I need not now set down,) I am disinclined to favor high verdicts in actions sounding merely in damages. But the amount of damages, a matter wherein no exact rule can be applied, must necessarily be left to the jury, with proper admonitions concerning their duty to regard the evidence, and to regulate their discretion by a just view of all the circumstances. A second time, a jury, properly admonished, has found a heavy verdict; five hundred dollars more this time than before. Several members of the Court think that the sum now found is not too high. The Court, in granting a new trial before, did not proceed upon the ground of excessive damages. Even if it had done so and now perceived no error in law, it would now regard the second verdict as the deliberate opinion of the proper tribunal, re-affirmed after reexamination, which, if not absolutely conclusive against the right of the Court to interfere with a matter so peculiarly within the province of the jury as the amount of damages, ought to stand, upon the principle expedit ut sit Jinis litium. Upon all the facts, and the amount of damages, the verdict must then be taken as decisive.
2 Speers,
This disposes of the first, fifth, sixth and seventh grounds of appeal.
As to the second ground. The verdict shews that any view of the facts which would have considered John J. Hannahan as in nowise implicated, must have been a mistaken view, if the circuit Judge had taken it. But indepen-ent of the verdict, there clearly was some evidence against him, which it was the province of the jury to weigh, and the right of the plaintiff to have weighed by them. According the practice settled in the case of Marshall v. Reynolds, the circuit judge might in his discretion have permitted the case of John J. Hannahan to have been submitted separately ; but this course would, if easily permitted, be productive of vexatious delays and embarrassments. It is necessarily an interference with the right of the jury, in considering a joint trespass, not to sever, if they please not to do so, in their verdict, against all who are found guilty; and under our *433 decisions as to severing damages and satisfaction, great perplexity or injustice might ensue, where the jury should find against a subordinate defendant, whose case is separately submitted, the whole damages according to the measure suitable for the most blameable of the trespassers, and then should afterwards find the same amount against the most blameable. The circuit judge, in his discretion, thought that the case of both defendants should go to the jury at the same time — and the jury, fully instructed as to their right to sever if they pleased, have thought that the two should not be distinguished. The result shews that the discretion of the Judge was properly exercised.
If the intention to exclude evidence had prompted the suit against John J. Hanahan, it seems that the same motive would have made defendants of Welsh and Carney also, whose testimony has gone to exculpate themselves as well as the defendants.
In considering the third and fourth grounds of appeal, and other matters of law which have been presented in connexion with them, I have to lament that our practice does not require a bill of exceptions, or some other mode by which a Judge’s instructions which are complained of might be precisely ascertained, and the complaints made of them might be signified before the jury retired, or at any rate before the verdict was rendered. As it is, after an unsatisfactory verdict, grounds of appeal are taken, imputing errors of law to the judge — he makes a report of so much of his charge as related to these grounds; and thus detached portions of the charge, standing isolated, acquire an importance which no person who heard the whole of it would have given to them, and the general complexion of the instructions favorable to the appellant is not at all seen in the hue of the few selected particulars which were unfavorable.
The third ground complains that the Judge instructed the jury that the evidence of Mr. Pinckney was not conclusive to show that the ditch was the true boundary line between the parties; and in arguing it here, it has been assumed that the opinion of the Court, upon the former appeal in this case, established that the ditch was the true boundary, and that the defendant had a right to re-open it.
The opinion before delivered decided that there should be a new trial, and all remarks upon facts were then purposely abstained from, (as was declared,) that the new trial might be had without prejudice. The sole ground of the decision was error in this direction given to the jury upon the first trial, that the entry of a defendant, who was owner, upon soil whereof the plaintiff was in possession, as a wrong doer, could be made a trespass, by reason of subsequent trespasses committed by the defendant, upon other soil, whereof the *434 plaintiff had rightful possession. Whether the plaintiff had any j.jgpq 0f possession to the land between the ditch and the road, or to the ditch itself, was a preliminary inquiry: noj. ma¿e¡ because the propriety of the direction was necesSarily considered in reference to the state of facts which it assumed to exist. But was this preliminary inquiry to be excluded, when a new trial was had 1 Possibly a new trial might be ordered, upon condition that certain admissions should be made; hardly, however, admissions to be made by the party who has the verdict with which he is content and against whom the order is made. But no condition was annexed, and the effect of the usual unconditional order which was made, was well understood in the very beginning of the second trial, when the defendant’s counsel, for fear that the jury might be thereby misled, objected even to the reading of the report of the former trial, and contended, as I hold, properly, that even the former opinion of the Court was only authority upon the points of law thereby adjudged, and that what was before in evidence, should be unknown to the jury, if not again made to appear.
Mr. Pinckney was called on, as he testified, to decide where the line ran, which was shewn by the papers of the parties ; he found it to run in the middle of the road ditch. If that had been the only question, it was for the jury to weigh, and not for the Judge to declare that Mr. Pinckney’s opinion must necessarily be conclusive. But conceding that upon the question of the line shewn by the papers, Mr. Pinckney’s evidence was not likely to be doubted, the plaintiff took other positions concerning the boundary from which, in effect, he contended that the paper line had been changed by the acts of the parties ; and upon all these positions, instructions were given to the jury, as the plaintiff had a right to require that they should be. These instructions necessarily presented alternative views. It is supposed that they confused the jury, or gave them reason to believe, that the Judge doubted, and they might find as they pleased. If such unhappy effect results from alternative views of the law, according to the facts as they may be found, I know no mode by which it can be prevented in a trial, wherein the whole of a complicated case is, at once, submitted to a jury, to be decided according to the law as expounded by the Judge, and the facts as they may be found by the jury. Clearness of instruction is highly desirable in jury trials; and according to their true theory, a case should, as far as possible, be relieved from complexity, and so simplified as to present only a few distinct issues of fact to be decided. One mode of simplifying a case, would be for the Judge'to assume for the truth, a certain state of facts upon one disputed point, and to apply his instructions to that — positively and without any alternative view; a more *435 effective mode would be for him to assume the facts upon all the points of dispute, and, applying the law, to decide the, case himself; but neither of these modes would be jury trial. It is never by assuming facts, but only by laying out of view immaterial matters, and arraying, properly, those which are to be considered, that a Judge can assist a jury, without invading their province.
Upon the supposition that the jury would, according to the evidence, find that the boundary line between the two proprietors, shewn by their papers, was, long ago, marked by a ditch, straight for the whole extent of the line, which was dug so that, for half way, the bank was thrown on one side, and for the other half on the other side; and that a fence had been built on the bank, so that it crossed the ditch where the bank changed from one side to the other; and that each half of this fence had been kept up by the proprietor on whose land it stood : the jury were instructed that if for more than twenty years, the proprietors had held, with a claim of right in the soil, up to the fence on each side, or with an understanding between them, that the bank on which the fence stood should shew the boundary, that, then, the plaintiff could maintain trespass for an injury to the soil, on his side of the bank. Apart from any thing peculiar in questions of boundary, which, more than questions of title, are influenced by evidence of acquiescence and possession, the length of possession required by this instruction would have been sufficient to establish a title, and with it all necessary muni-ments, if the possession had been adverse, as it must have been, if it had been held either with a claim of right in the soil, or with a mutual understanding between the parties, that the possession should shew the extent of the right. A fence is an actual barrier which separates adjoining lands, and it is more probable that parties, for their boundary, agreed upon that which did actually limit their enjoyment, than that they agreed upon either an imaginary line shewn by a paper, or a ditch which time was constantly filling up, and which may have been dug only to raise the bank upon which this actual barrier stood. There was, then, no error in this instruction.
J3ut the jury may have found that the possession was only permissive, not adverse, and that notwithstanding its long continuance, it was held in conformity with an agreement, that the centre of the ditch should shew the true line, and that the ditch should constitute the actual boundary, either party being at liberty, when he pleased, to resume occupancy in severalty of the bank and fence, on his own side. Therefore, in the alternative view, complained of in the fourth ground of appeal, the jury were instructed that if the ditch was the boundary, and the defendant had a right to re-open *436 it, he had no right to remove the fence, if that were not ne~ (cessary to the re-opening of the ditch. It will be observed that this relates to the removal of the lateral fences of the garden, which crossed the ditch, and joined the plaintiff’s outside fence that was cut off from his garden by the new ditch. In digging the new ditch, a panel of each lateral fence was removed. The removal could have been made only by going upon the plaintiff’s land, and carefully separating the panel from the remainder of the fence that was left standing thereon, or by forcibly tearing the panel away.— Neither of these modes of removal was a trespass, if it was an act of violence done in the execution of a rightful purpose, but necessary to the purpose. This plain truism is not denied, but it is insisted that the careful removal of the whole panel was the least injurious mode in which a passage, for the ditch, could be effcted, and was therefore necessary. But if the right of the defendants was to re-open every inch of the old ditch, and could not have been satisfied by cutting up to the lateral fence, on either side, and leaving the thickness of the fence unopened, it may have appeared to the jury, that cutting under the fence would have been less injurious than removing a panel, of which part was unquestionably on the plaintiff’s land, and that the right to remove, as he did, was not necessary to the extreme right urged by the defendants. Surely it was an extreme right, that he who had seen the building of the fence, and alteration of the garden, and tacitly assented to them, should cut a ditch three feet wide, through the garden, as a means of marking a line. It was incumbent on him, whilst he resumed dominion over his road, and bank and fence, and resisted the claim set up in opposition to his rights of property, to take care that he in no wise transgressed the bounds which, on his side, he so jealously guarded. Even less defensible than the removal of the panels of fence, was the removal of the gate posts.
5 Taunt. 20.
Vide building Act, 14 Geo. 3d-
2 Bail 389
The Court, then, assents to the propriety of the instruction by which the jury were left to judge of the necessity which required invasions of the plaintiff’s soil for effectual execution of the defendants’s right to re-open the ditch, even if that right existed; but of the existence of that right, the Court is not called on to decide. The English Court, in the case of Mates v. Hawkins, has decided that where a wall stands upon a line between two adjoining lots, each proprietor is entitled to certain easements in the wall, but that both under the Act and independent of it, each is owner of the land upon which the half wall on his side of the line stands, an<* that the property of the wall follows the property of the land. Our own Court, in Gibson v. Vanghn, has decided that a common boundary between two proprietors is the property of both, and where a fixture is put on a line, by the *437 labor of both, they are, as to the fixture, tenants in common. A tenancy in common, as to a fixture erected upon a boun-1 dary, must, however, arise from implied contract, and may consist with a right of property which, upon removal of the fixture, will remain in either proprietor, upon his side of the exact mathematical line; and may consist, too, with the right of either proprietor to retract his assent from any agreement that a ditch or other marked space should be held in common as a boundary, if no injury be, by the retraction, done to the other proprietor. It does not, then, follow that if the true boundary line was in the centre of the ditch, the defendant must, under the circumstances of this case, be held, of course, to have had the right to open more than that half of the ditch which was on his own side of the line.
Assuming the defendant’s right to re-open the whole ditch, his counsel has relied greatly upon another objection to the instructions given to the jury, which is not embraced in any of the grounds of appeal, unless it falls under the eighth one, that the verdict is contrary to law and evidence. The objection is to the holding that even if the defendants had the right to re-open the ditch, it was a trespass in either of them if, by his directions, any dirt had been thrown on the plaintiff’s side of the ditch, or if he had unnecessarily stepped upon the plaintiff’s land. An accidental harmless falling of a spade full of dirt, on the plaintiff’s land, could not be said to be a throwing of dirt thereon by directions of one of the defendants, and so could not come within the instructions. But it is contended that a right to open the ditch, carried with it a right to throw the dirt on either side. If the right to re-open existed, it could exist only by virtue of an implied agreement that the state of things, originally established, shewed the rights of the parties, and should be perpetuated ; but by the original arrangement, at the end of the line where the plaintiff lived, the bank, made by the dirt which was thrown from the ditch, was on the defendants’s side, at the other end on Jenkins’s side: the defendant, to continue things as they had been, was then bound to throw the dirt, where before it had been thrown, upon his own side.
The unnecessary stepping, by one of the defendants, upon the plaintiff’s land, would, under ordinary circumstances, have been a trifle, which the law would have disregarded, but such an act was, in the charge, spoken of in reference to the circumstances which must have attended it, if it was not justified by any necessity connected with a right in the defendant. Often a foot print may be rightfully or harmlessly impressed upon another man’s soil; but where the motive is bad, and matters of aggravation have attended the entry, the least entry is a trespass; and any trespass having been established, the matters of aggravation may be shewn, to en *438 hance the damages. The trespass in such cases is not, as it has been called in argument here, the excuse for the action ; but it is the formal part only of the injury, — absolutely necessary to be shewn to sustain the action, but often made less important, in the consideration of the quantum of damages to be given for a breach of the close attended by other wrongs, than it has been in this case.
This Courtis satisfied that, in this case, no error was committed, unfavorable to the defendants, in the instructions which were given to the-jury, concerning the various matters that were dwelt upon as technical trespasses. The jury have found some trespass, and have ascertained the damages.— No sufficient cause for disturbing the verdict appears.
The motion is dismissed.
O’Neall, J.--Evans, J. — Frost, J. — and Withers, J.— concurred.

Motion refused.